Reba MONISOFF, Plaintiff,

v.

AMERICAN EAGLE INVESTMENTS, INC. and Allen R. Rosenberg, Defendants.

No. 96 CIV. 2216 (JSR).

United States District Court, S.D. New York.

June 10, 1996.

Law Office of Russell K. Statman, New York City for Plaintiff.

Barrack, Rodos & Bacine, Joseph R. Sahid, New York City, Daniel E. Bacine, and Jeffrey W. Golan, Philadelphia, PA, for Defendants.

### MEMORANDUM OPINION AND ORDER

RAKOFF, District Judge.

On March 27, 1996, plaintiff Monisoff brought suit against the securities firm of American Eagle Investments, Inc. and its president Allen R. Rosenberg, alleging fraud in their management of her securities account. Defendants promptly moved to stay the action pending arbitration. Following receipt of written submissions, the Court heard argument on May 31, 1996. For the reasons that follow, the motion is denied.

"Whether or not a matter is arbitrable is a matter for judicial determination." *Spear Leeds & Kellogg v. Central Life Assurance Company,* 85 F.3d 21, 25, (2d Cir.1996). The

---

first step is to ascertain whether the parties entered into an agreement to arbitrate. "Only when an agreement to arbitrate is found to exist does a Court proceed to decide whether a given dispute falls within the scope of that agreement." *Id.* at 25.

Here, the defendants contend that such an agreement exists in the form of a Customer Agreement signed by Ms. Monisoff and prepared by Ernst & Company, a securities broker used to clear Ms. Monisoff's trades. While the Customer Agreement, a printed standardized form, simply recites that it is an agreement between "customer" and "broker," the only broker identified by name anywhere in the agreement is Ernst & Company, on whose letterhead the agreement appears. American Eagle Investments is not named anywhere in the agreement.

Nonetheless, defendants argue that "broker" should be read to encompass not only the named, clearing broker, Ernst & Company, but also the unnamed, introducing broker, American Eagle Investments. While defendants' counsel conceded at oral argument that ordinary canons of contractual interpretation would preclude such a stretch, defendants contend that "common law" principles of interpretation are "trumped" in this case by a strong federal policy favoring arbitration. *See generally Mitsubishi v. Soler Chrysler Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). In particular, defendants rely on the Supreme Court's statement in *Moses H. Cone, supra*, 460 U.S. at 24–25, 103 S.Ct. at 941–42 that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

This language, however, applies on its face only to the *scope* of the issues subject to arbitration, not to the threshold issue of whether there exists any agreement to arbitrate between the parties. "These two inquires are separate and independent." *Spear Leeds & Kellogg, supra*, at 25. Moreover, the threshold requirement is "a straightforward question of contract law," *Gould v. Sidel*, 1990 WL 209641, *1 (S.D.N.Y., 1990) (Mukasey, J.), unaffected by any policy favoring arbitration. While federal arbitration policy may help to define the scope of what the parties are agreeing to when they agree to arbitrate a contractual dispute, it cannot create a contract between non-contracting parties.

On its face, Ernst & Company's Customer Agreement is a contract between Ernst & Company and its customer, and no one else. Hence, there exists no agreement to arbitrate between Ms. Monisoff and American Eagle Investments.

Defendants' fallback claim is that American Eagle Investments is a third-party beneficiary of the Ernst & Company Customer Agreement and therefore of its arbitration provisions. *See Paine Webber Jackson & Curtis, Inc. v. Chase Manhattan Bank*, 728 F.2d 577 (2d Cir.1984). However, where an agreement between a customer and a clearing broker does not express a clear intent to benefit the introducing broker, the introducing firm will not be held to be a third-party beneficiary. *McPheeters v. McGinn, Smith and Company, Inc.*, 953 F.2d 771 (2d Cir. 1992) at 773, *citing Church v. Gruntal & Company*, 698 F.Supp. 465, 467 (S.D.N.Y. 1988). *See also Kyung Sup Ahn v. Rooney Pace, Inc.*, 624 F.Supp. 368, 371 (S.D.N.Y. 1985).

Defendants claim that the Customer Agreement evidences such intent when it states that "This agreement shall enure to the benefit of the broker's present organization...." But there is nothing in the plain meaning of these words to suggest that an independent brokerage firm like American Eagle Investments is somehow encompassed in the definition of Ernst & Company's "present organization." Moreover, the quoted clause is part of a section of the Customer Agreement entitled "Successors," and, more particularly, part of a sentence that reads: "This agreement shall enure to the benefit of the broker's present organization, and any successor organization, irrespective of any

change or changes at any time in the personnel thereof, for any cause whatsoever." The context thus makes clear that this sentence is directed at personnel changes within the named broker and does not extend to other, unnamed, and independent firms.

Accordingly, for the foregoing reasons, defendants' motion to stay is denied. A Case Management Order shall issue separately, requiring this case to be ready for trial within six months.

SO ORDERED.