**LOCAL 205, COMMUNITY AND SOCIAL AGENCY EMPLOYEES' UNION, DISTRICT COUNCIL 1707 AFSCME, AFL–CIO, Petitioner,**

v.

**DAY CARE COUNCIL OF NEW YORK, INC., Respondent.**

No. 97 Civ. 988 (MGC).

United States District Court, S.D. New York.

Jan. 28, 1998.

Law Offices of Leonard Leibowitz by Harvey S. Mars, New York City, for petitioner.

Proskauer Rose Goetz & Mendelsohn LLP by Gregory B. Reilly, David Diamond, New York City, for respondent.

## OPINION

CEDARBAUM, District Judge.

Local 205, Community and Social Agency Employees' Union, District Council 1707 AFSCME, AFL—CIO ("the Union") petitions for confirmation and enforcement as against Day Care Council of New York, Inc. ("DCC") of an arbitration award which was rendered on April 23, 1996 (the "Award") and arose from employee grievances against the Georgia–Livonia Day Care Center ("the G–L

Center"). The G–L Center is closed and apparently insolvent.

While the Award does not explicitly direct DCC to provide any relief to the grievants and the arbitrator did not specify against whom certain parts of the Award are directed, the Union argues that the Award should be interpreted as against DCC. DCC responds that it was not a party to the arbitration provision of the collective bargaining agreement ("the CBA") between the Union and the day care center employers ("the Centers") that are the members of DCC, and therefore it did not agree to submit any disputes involving itself to arbitration.

Since the material facts are undisputed, an evidentiary hearing on the question of whether there is a valid agreement to arbitrate between the parties is not required in this case. *See Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir.1995); *cf. McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir.1980). For the reasons set forth below, the petition is denied.

## BACKGROUND

New York City has a competitive bidding process whereby Centers must periodically bid to obtain and retain their contracts with the City. In addition, the City has the right to cancel a Center's contract if it engages in administrative or fiscal improprieties. As a result, each year new Centers take over the operations of existing day care centers. On about March 31, 1995, the G–L Center lost its contract with the City.

DCC is a non-profit, multi-employer bargaining association that represents approximately 300 member Centers (including, in the past, the G–L Center) throughout New York City in collective bargaining with the Union over the terms and conditions of employment at these Centers. DCC also provides voluntary mediation of labor grievances through its Labor Relations Assistance and Mediation Service. (Springer Aff. ¶¶ 2, 8.) According to Union representative C. Hetram Mohan, DCC also "has provided counsel ... to each of its members who are involved in arbitration proceedings with the Union." (Mohan Aff. ¶ 19.)

DCC does not play any role in operating the 300 independent, City-funded Centers or in implementing the City regulations that govern the individual Centers. Union members are employed by individual Centers and are not employees of DCC. DCC does not monitor, supervise, discharge or perform any of the customary roles of an employer. (Nadelbach Aff. ¶ 6; Springer Aff. ¶¶ 4, 6.)

DCC negotiates the CBA "for and on behalf of those of its member Centers ... that have authorized [DCC] to represent them for the purposes of collective bargaining" with the Union. (CBA, Ex. B to Verified Petition, at 1.) The CBA's preamble states that DCC is a "part[y]" to the agreement and DCC signs the agreement as such; however, the agreement expressly states that DCC represents the Centers "for the purposes of collective bargaining." (*Id.*) The CBA contains "Grievance and Arbitration" provisions for handling "grievances." The "Grievance and Arbitration" provisions state in pertinent part:

### Article XV. GRIEVANCE AND ARBITRATION

Sec. 1. A grievance is a dispute between parties as to the interpretation or application of any of the terms of this Agreement or the asserted breach thereof, including the discharge of any employee....

Sec. 2. Grievances shall be handled in accordance with the following procedure:

Step 1. An employee with a grievance may, alone or together with his/her Union representative, first discuss it with a representative of the Center designated by the Board....

Step 2. If it is not resolved, the grievance shall then be submitted in writing by the grievant and a Union representative to the employee's Center Director within ten (10) working days from completion of Step 1....

Step 3. A grievance not resolved in Step 2 may, within thirty (30) calendar days after completion of Step 2, be submitted in writing by the Union to the Board of Directors of the Center, which shall give

its written decision thereon within ten (10) working days after receipt of the written grievance.

Step 4. A grievance not resolved in Step 3 may, within (30) calendar days after completion of Step 3, be submitted in writing by the Union or the Center to the Director of the Day Care Council's Labor Relations Assistance and Mediation Service for mediation. In the event the Matter is not resolved via mediation efforts, the Director of the Labor Relations Assistance and Mediation Service shall notify both parties in writing that mediation efforts have been completed.

Step 5. A grievance not resolved in Step 4 may be submitted to arbitration to the American Arbitration Association in the City of New York under its then obtaining Voluntary Labor Arbitration Rules, unless the grievance involves a dispute which is not subject to arbitration under the terms of this agreement. The fee and expenses of the arbitrator and the charges of the American Arbitration Association shall be borne equally by the parties. The award of the arbitrator shall be final and binding, except for proceedings to enforce or vacate the award as permitted by law.

Sec. 3. Request for arbitration must be made by the party desiring it within thirty (30) calendar days after completion of Step 4, and shall be made in writing to the other party and to the American Arbitration Association specifying the issue or issues to be arbitrated.... After submission of a grievance to arbitration, the Center and the Union are encouraged to continue to seek to resolve the grievance....

Sec. 4. The union, as such, and any Center shall have the right to submit grievances. Any such grievances may be initiated at Step 2, and shall then be processed in accordance with the procedure set forth herein. The Union and/or Center may, in emergency circumstances, file immediately for Step 4 mediation after initial presentation of a written grievance.

Sec. 5. In connection with any grievance that has reached Step 2, a meeting shall be held at the request of either party hereto between the Board of Directors of the Center involved, or a committee or designee thereof, and the grievant and a representative of the Union and/or the appropriate grievance committee, for the purpose of discussing the grievance before a decision is made....

Sec 10. Any question concerning the interpretation of the collective bargaining agreement must be referred to the Day Care Council initially.

(CBA, at 25–29.)

Over the course of 1996, more than 200 grievances were filed by the Union against Centers in accordance with this grievance procedure. Six of these resulted in arbitration. (Springer Aff. ¶ 10.) It is undisputed that no grievance has ever been brought against DCC by the Union. (Springer Aff. ¶ 10.)

The arbitration arose from grievances filed by the Union against the G–L Center on behalf of Anne Beasley, Pamela Butts, Delores Jones, Norma Mojica and Edith Young for accrued but unused vacation pay, severance pay and other benefits owed at the time the G–L Center terminated their employment; on behalf of Jennifer Hamilton, Michael Jones, Pamela Robinson and Cheryl Lowry for failure to pay contractually required benefits; and on behalf of Michelle Williams and Taryn Halloway for termination without just cause. (Springer Aff. ¶ 12.) The G–L Center and the Union attempted to resolve the eleven grievances through the CBA's grievance process, but were unsuccessful. (Id.¶ 14.) On November 30, 1994, pursuant to Step 4 of the CBA's Grievance and Arbitration procedures, a mediation session was conducted by Jay Nadelbach, Esq., Director of DCC's Labor Relations Assistance and Mediation Service, after which Nadelbach sustained the grievances. (Mohan Aff. ¶ 8.) The G–L Center failed to comply with the mediator's recommendations. On January 12, 1995, Nadelbach sent a letter to G–L Center and the Union, addressed "[t]o the parties," stating that mediation was closed and that the Union "may now proceed to arbitrate as per the parties' collective bargaining agreement." (Mohan Aff. ¶ 9 and Ex. C.)

In July 1995, the Union representative authorized arbitration for grievants Beasley, Butts, Hamilton, M. Jones, Mojica and

Young, and named "Georgia–Livonia Day Care Center" as the party against whom arbitration was to be initiated. (Verified Petition, Ex. C.) With respect to these grievants, the Union served formal notices of arbitration on the G–L Center and submitted copies to the American Arbitration Association.[1] (Mohan Aff. ¶ 16; Verified Petition, Ex. D.) Each notice was captioned "In the Matter of the Arbitration Between District Council 1707, American Federation of State, County and Municipal Employees, AFL—CIO and Georgia–Livonia Day Care Center." Each notice defined the issue to be arbitrated as "whether the employer violated the labor agreement" by failing to pay wages or certain benefits to each grievant. DCC is not referred to or copied in any of the notices. (Verified Petition, Ex. D.) DCC was aware that the grievances against the G–L Center had been submitted to arbitration, because Nadelbach received correspondence from the Union that referred to the anticipated arbitration of the grievances. (Mohan Aff. ¶¶ 5, 11 and Exs. B, D.) In addition, Union representative Mohan avers that he personally advised Nadelbach of the "dates of the arbitration proceeding against the GL Center." (Mohan Aff. ¶ 20.)

On February 16, 1996, Arbitrator Jack D. Tillem, Esq. held an arbitration hearing at which neither the G–L Center nor DCC was present. (Id.; Verified Petition ¶ 11.) On April 23, 1996, Arbitrator Tillem issued an award sustaining the grievances. (Verified Petition ¶ 12 and Ex. F.) Unlike the notices of arbitration, the Award was captioned "In the Matter of the Arbitration Between Day Care Council of New York, Inc. and Local 205, Community and Social Agency Employees Union, District Council 1707, AFSCME, AFL—CIO." The Award appears to refer to DCC as the "employer" by stating that: "[e]mployer negotiates the wages, hours and working condition for and on behalf of its member day care centers." (Verified Petition, Ex. F, at 2.) However, the Award recognizes that the grievants were employed by the G–L Center. (Id.)

The Award states that the issue in dispute is whether the G–L Center, not DCC, violated the CBA with respect to the named grievants. (Id. at 2.) Additionally, the Award states that, "[a]lthough duly notified by the American Arbitration Association of the date, time and place of the hearing, the Employer and its representative failed to appear at the hearing and failed to request an adjournment thereof." (Id. at 1.) The Award specifically directs the G–L Center to pay certain contractual benefits to four of the grievants. The Union concedes that it is not entitled to relief from DCC with respect to this part of the Award. (Reply Brief at 19 n. 6.) With respect to grievants Williams, Butts, Young, Mojica, Beasley and D. Jones, the Award states that "[g]rievant . . . was discharged without just cause and shall be reinstated to her former position" with benefits and, except for D. Jones, with back pay. The Award does not specify what organization is responsible for providing that relief. With respect to grievant Halloway, the Award states that "[g]rievant was discharged without just cause and shall receive back pay and benefits." Again, the Award fails to state what organization is responsible for providing that relief. (Verified Petition, Ex. F, at 4–6.) Lastly, the Award directs that "[t]he parties shall share equally the cost of this proceeding including the undersigned arbitrator's fee and expenses. In the event that the employer does not pay its share, the union shall be entitled to recover any amounts it pays on behalf of the employer." (Id. at 6.) The Union has never requested that DCC pay any arbitration costs. (Springer Aff. ¶ 21.) The Union now seeks to enforce the Award as against DCC, plus costs, interest and disbursements.

## DISCUSSION

I. DCC Did Not Agree to Arbitrate Any Disputes Pursuant to the CBA's Arbitration Provision.

■ "[A]rbitration is a matter of contract and a party cannot be required to submit to

---

1. In January 1995, the Union had requested arbitration against the G–L Center on behalf of grievant Williams by sending a letter to the American Arbitration Association, with a copy to the G–L Center. (Verified Petition, Ex. D.) While the Award also sustained the grievances of D. Jones, Robinson, Lowry and Halloway, notices of arbitration with respect to those grievants have not been submitted by either party.

arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). It is the duty of the court to determine whether the parties agreed to arbitrate disputes. *Id.* at 649; *Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 85 F.3d 21, 25 (2d Cir.1996) (court's initial task is to determine whether the parties entered into an agreement to arbitrate), *cert. denied,* —— U.S. ——, 117 S.Ct. 609, 136 L.Ed.2d 534 (1996).

■■■■ General contract law principles should be applied to determine whether the parties agreed to arbitration and to ascertain and implement the reasonable expectations of the parties. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Spear,* 85 F.3d at 28. A contract should be read to give effect to all of its provisions and to render the provisions consistent with each other. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). The CBA, read as a whole, does not evidence an intention by the parties to arbitrate disputes involving DCC. The Union argues that because DCC is referred to as a "party" in the preamble and DCC signed the CBA, DCC is bound as a party to the arbitration clause. The language and structure of the grievance procedure set out in the CBA, however, are inconsistent with an intention to bind DCC to arbitration of disputes with the Union. Because the arbitration procedure is designed to resolve disputes between employers and employees, each step of the grievance procedure mentions the Union and Center specifically. While the CBA provides that the "party" desiring arbitration can request it, this language comes at the end of a lengthy discussion of the manner in which the Union and the Center are to attempt to resolve grievances. In the "Grievance and Arbitration" section, DCC is mentioned only as the neutral mediator between the Union and the Center and as the entity to which questions of CBA interpretation should be referred. Moreover, within this section, the term "either party" is used, indicating that the arbitration clause was intended to apply to only

two "parties," the Union and the Center. *See McPheeters v. McGinn, Smith and Co., Inc.,* 953 F.2d 771, 774 (2d Cir.1992) (fact that arbitration provision referred to disputes between two parties indicated that the provision did not cover disputes involving a third party); *Matter of Arbitration Associated Plumbing & Mechanical Contractors of Sacramento, Inc. v. Local Union No. 447, United Ass'n of Journeymen and Apprentices of Plumbing and Pipe Fitting Indus.,* 811 F.2d 480, 484 n. 5 (9th Cir.1987) (using context to determine whether term "employer" referred to association or actual employer). *General Contractors Ass'n of New York, Inc. v. Metallic Lathers' Union of New York City & Vicinity, Local 46, of Wood, Wire and Metal Lathers Intern. Union,* 1982 WL 2117 (S.D.N.Y.1982), cited by the Union to support its argument that DCC is bound by the arbitration provision, is not in point. There is no discussion in that case about whether the multi-employer association had agreed to arbitrate, and no indication that the association argued that it was not bound by the arbitration agreement.

In addition, "[t]he parties' practical interpretation of their contract prior to litigation provides 'compelling evidence of the parties' intent,'" including their intent with respect to arbitration. *Gestetner Holdings, PLC v. Nashua Corp.,* 784 F.Supp. 78, 83 (S.D.N.Y. 1992) (quoting *Ocean Transport Line, Inc. v. American Philippine Fiber Indus., Inc.,* 743 F.2d 85, 91 (2d Cir.1984)). The parties' prior conduct under the CBA supports the conclusion that the arbitration provisions do not apply to DCC. Although there were approximately 200 grievances filed by the Union against Center Employers in 1996, the Union never filed a grievance against DCC and never sought to arbitrate against DCC. The Union admits that under the CBA, an arbitration award has never before been issued against DCC for contractual violations committed by DCC members. While the Union contends that the facts of this case are extraordinary and merit an award against DCC, the prior arbitration practice under the CBA supports the most reasonable interpretation of the language of the CBA, that DCC

was not intended to be within the scope of the arbitration clause.

The Union argues that the presumption favoring arbitrability, an accepted rule of construction in determining the scope of arbitration clauses in collective bargaining agreements, should apply in this case. *See United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 371, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). It is correct that there is a federal policy favoring arbitration of disputes, and that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). But the question here is not the "scope of arbitrable issues," rather whether DCC agreed to submit *any* disputes to arbitration. "The federal policy [favoring arbitration] presumes proof of a preexisting agreement to arbitrate disputes arising between the protagonists.... The federal policy ... does not extend to situations in which the identity of the parties who have agreed to arbitrate is unclear." *McCarthy v. Azure,* 22 F.3d 351, 355 (1st Cir.1994). The Supreme Court's statement in *Moses H. Cone,* quoted above, "applies on its face only to the scope of the issues subject to arbitration, not to the threshold issue of whether there exists any agreement to arbitrate between the parties." *Monisoff v. American Eagle Investments, Inc.,* 927 F.Supp. 137, 138 (S.D.N.Y.), *aff'd,* 104 F.3d 356 (2d Cir.1996); *see also Gould v. Sidel,* 1990 WL 209641, at *1 (S.D.N.Y.1990) ("[a]lthough any contract providing for arbitration must be liberally construed in favor of arbitration, the court must decide initially whether such a contract exists"). And as the Second Circuit has recognized, "[t]hese two inquiries are separate and independent." *Spear,* 85 F.3d at 25. *See also Fuller v. Guthrie,* 565 F.2d 259, 261 (2d Cir.1977) (while recognizing the federal policy favoring arbitration, stating that the "decision to arbitrate must be consciously made"). The presumption is not intended to force an interpretation requiring parties to arbitrate

if they did not agree to submit any disputes to arbitration.

Furthermore, because the presumption is intended to further the policy of peaceful resolution of labor disputes and the avoidance of strikes and lockouts, there is less to commend the presumption in construing the applicability of arbitration clauses to disputes between parties other than the employer and the employee. *See Schneider Moving & Storage,* 466 U.S. at 372 (refusing to apply presumption in favor of arbitration to question of whether arbitration agreement applied to disputes between employer and pension fund trustees); *see also Associated Plumbing & Mechanical Contractors,* 811 F.2d at 482 (presumption of arbitrability did not apply to dispute between multi-employer bargaining association, party to collective bargaining agreement, and its individual employer-member). Here, DCC is not the employer and there is no issue of strikes or lockouts. For all of these reasons, "the presumption of arbitrability is not a proper rule of construction" in determining whether the CBA obligates DCC to arbitrate. *Schneider Moving & Storage,* 466 U.S. at 372.

Because the CBA does not establish an intention of the parties to submit disputes involving DCC to arbitration, no valid arbitration agreement exists between DCC and the Union, and enforcement of the Award as against DCC is not warranted.

## II. DCC's Defenses Are Not Time Barred.

■ Finally, the Union argues that DCC's defenses cannot be asserted in opposition to this petition to confirm, because § 12 of the Federal Arbitration Act ("FAA") provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. *See Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 175 (2d Cir.1984) (FAA's three month limit on time to file motion to vacate applies to defenses raised in opposition to motion to confirm arbitration award).

While it is undisputed that the three-month limit has passed, DCC is correct that the limitations period of § 12 does not prevent it from arguing that it has not agreed to

arbitrate any disputes. DCC does not seek to vacate the Award on the grounds set forth in § 10 of the FAA. To the contrary, DCC argues that the Award does not apply to it and cannot be confirmed or enforced as against it because DCC never agreed to arbitrate. Section 12 does not apply in these circumstances. *See Getty Oil Co. v. Norse Management Co.*, 711 F.Supp. 175, 176 (S.D.N.Y.1989). In *Getty Oil*, the petitioner sought confirmation of an arbitration award, and the court held that the other party to the arbitration agreement was barred under *Florasynth* from challenging the award because the time in which to file a motion to vacate under § 12 had expired. However, the court permitted the party's agent, who had executed the arbitration agreement on behalf of its principal, to argue that, as the agent of a disclosed principal, it was not liable under the agreement. Similarly, DCC can raise its defense that it did not enter into any agreement to arbitrate, although the G–L Center might be barred from challenging the Award at this point in time.

■ Even if DCC's argument did constitute a defense to which § 12 of the FAA might apply, the statute is inapplicable in this case, which is brought under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The Second Circuit has held that the statute of limitations applicable to a motion to vacate an arbitration award in a suit under § 301 of the LMRA is borrowed from state law. *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir.1990); *see also Burns Int'l Security Servs. v. International Union, United Plant Guard Workers of America*, 47 F.3d 14, 16 (2d Cir.1995) (actions under § 301 borrow state statute of limitations). Therefore *Florasynth*, which did not involve the LMRA, does not govern here. In *Harry Hoffman Printing*, a case arising under the LMRA, the court applied New York C.P.L.R. § 7511, which states that "[a]n application to vacate or modify an award may be made by a party within ninety days after its delivery to him." C.P.L.R. § 7511(a). Indeed, the Union recognizes in its reply brief that, under *Harry Hoffman Printing*, C.P.L.R. § 7511 applies to actions under §. 301 of the LMRA,

but neither party discusses the applicability of § 7511 to this action—which, according to the Verified Petition, is brought pursuant to the LMRA and the FAA.

Although the ninety day limitations period of § 7511(a) is nearly the same as the FAA's three month limit, and it is undisputed that both time limits have passed, the distinction is important. Unlike the FAA's statute of limitations as construed by *Florasynth*, § 7511(a) does not prevent DCC from raising defenses to this petition to confirm. As the New York cases that have addressed the issue make clear, C.P.L.R. § 7511(a) only applies to motions to vacate or modify arbitration awards. It does not apply to objections or defenses to a petition to confirm. *See, e.g., Vilceus v. North River Ins. Co.*, 150 A.D.2d 769, 769, 542 N.Y.S.2d 26, 27 (2d Dep't 1989); *In Matter of Arbitration between Sutorius and Hanover Ins. Co.*, 166 Misc.2d 465, 467–468, 633 N.Y.S.2d 923, 925 (Sup. Ct. Suffolk County 1995), *aff'd*, 233 A.D.2d 332, 649 N.Y.S.2d 183 (1996); *see also* McLaughlin, Practice Commentaries, McKinney's Cons.Laws of New York, Book 7B, CPLR C7511:1, at 578–579 (1980) (aggrieved party has only ninety days to move to vacate, but may simply omit the motion and wait until the victor moves to confirm the award before raising grounds to vacate). In fact, the Second Circuit recognized this difference between § 7511 and the FAA in *Florasynth*, when it stated that "New York law permits a party to oppose a motion to confirm with a motion to vacate even after three months have passed." 750 F.2d at 175. And, other cases arising under the LMRA have applied § 7511 and permitted respondents to raise defenses in petitions to confirm arbitration awards, despite the expiration of the limitations period for a motion to vacate. In *Bevona v. Puretz*, 1992 WL 50936, at *4 (S.D.N.Y. 1992), for example, the court applied C.P.L.R. § 7511 rather than § 12 of the FAA in an action under the LMRA to confirm an arbitration award, holding that the respondent was not barred from seeking to vacate the award despite the expiration of the limitations period. *See also International Ass'n of Heat and Frost Insulators, Local No. 12 v. Insulation Quality Enters., Ltd.*, 675 F.Supp.

1398, 1404 (E.D.N.Y.1988) (applying § 7511 in action to confirm arbitration award brought under LMRA and FAA).

Since C.P.L.R. § 7511 rather than § 12 of the FAA applies in this case, DCC is not time barred from asserting its defenses in opposition to the petition to confirm.

*CONCLUSION*

For the foregoing reasons, the Union's petition for confirmation and enforcement of the Award as against DCC is denied.

SO ORDERED.