19-3057-cv
*Arnaud v. Doctor's Associates, Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of September, two thousand twenty.

PRESENT:  JOSÉ A. CABRANES,
          RAYMOND J. LOHIER, JR.
          SUSAN L. CARNEY,
                    *Circuit Judges.*

---

LUIS ARNAUD, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED

　　　　　　　　*Plaintiff-Appellee,* 　　　　　　19-3057-cv

　　　　　　v.

DOCTOR'S ASSOCIATES INC., D/B/A SUBWAY,

　　　　　　　　*Defendant-Appellant.*

---

| | |
|---|---|
| **FOR PLAINTIFF-APPELLEE:** | C.K. Lee, Lee Litigation Group, PLLC, New York, NY. |
| **FOR DEFENDANT-APPELLANT:** | Ian Charles Ballon, Lori Chang, Greenberg Traurig, LLP, Los Angeles, CA, William Wargo, Greenberg Traurig, LLP, New York, NY |

Appeal from a September 10, 2019 order of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court be and hereby is **AFFIRMED**.

Plaintiff-Appellee Luis Arnaud brought this putative class action alleging that Defendant-Appellant Doctor's Associates, Inc. d/b/a Subway ("Subway") sent him unsolicited text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Subway filed a Motion to Compel Arbitration in the District Court, contending that Arnaud had agreed to arbitrate any claims against Subway at the moment he entered his phone number on a promotional page of Subway's website and then clicked a button labeled "I'M IN" in order to receive a free sandwich the next time he purchased a 32-ounce beverage. According to Subway, such an action constituted assent to the terms and conditions contained on a separate webpage that was accessible via a hyperlink on the promotional page—terms and conditions that included an agreement to arbitrate.

Nevertheless, the District Court denied Subway's Motion, finding that no arbitration agreement existed between the parties since the terms and conditions were not reasonably clear and conspicuous on the promotional page itself. As a result, Arnaud was not on notice of the arbitration provision. Subway now appeals the denial of its Motion, arguing (1) that the District Court applied the wrong standard in evaluating whether the terms and conditions were reasonably clear and conspicuous to Arnaud; and (2) that Arnaud did not provide sufficient evidence, in the form of an affidavit or otherwise, to create a factual dispute over whether he manifested his assent to the terms and conditions. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"A district court's denial of a motion to compel arbitration is reviewed *de novo*." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002). Although there is a "federal policy . . . to construe arbitration clauses as broadly as possible," *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (quotation marks omitted), we only undertake such broad construction once we have answered "[t]he threshold question facing any court considering a motion to compel arbitration": that of "whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant*, 697 F.3d 110, 118 (2d Cir. 2012). This is a question of law that "is governed by state-law principles of contract formation." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). In this case, the District Court applied New York law after determining that the outcome would not be different under New York law or Connecticut law, the two contenders. *Arnaud v. Doctor's Associates, Inc.*, No. 18-CV-3703, 2019 WL 4279268 at *5 (E.D.N.Y. Sept. 10, 2019). Since Subway does not challenge the application of New York law on appeal, and argued below that either New York or Connecticut law should apply and that the outcome would be the same under either state's law, we apply New York law as well. *See id.* at *3.

Under New York law, "courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and

2

enforceable contract." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 693 N.Y.S.2d 857, 860 (1999).

"Where an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent. In determining whether an offeree is on inquiry notice of contract terms, New York courts look to whether the term was obvious and whether it was called to the offeree's attention." *Starke*, 913 F.3d at 289. More specifically, "[i]n the context of web-based contracts, we look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms." *Id.* Indeed, as we have noted in a case applying Washington law, what we must look for in determining whether "there was notice of the existence of additional contract terms" is whether the "design and content of [a] webpage rendered the existence of [those] terms reasonably conspicuous." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016).

In that case, we concluded that "reasonable minds could disagree" about whether Amazon's order page put the user on inquiry notice of Amazon's hyperlinked terms and conditions. *Id.* at 238. We reached that conclusion because of, among other things, the font of the terms and conditions hyperlink, the fact that it was hard to find on a cluttered webpage, and the fact that nothing about the button to be clicked—"Place your order"—indicated that additional terms applied. *Id.* at 236-37. There, the language linking the button to the terms and conditions—"By placing your order, you agree to Amazon.com's . . . conditions of use"—was "not bold, capitalized, or conspicuous in light of the whole webpage." *Id.* at 237. By contrast, in a more recent case we noted that where, among other things, the webpage is relatively sparse, the link to additional terms is immediately visible, the prompting language introducing the terms to the user (i.e. "By creating an Uber account, you agree to the [terms and conditions]") is "spatially coupled" with the registration button, a user would be on inquiry notice of the hyperlinked terms. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78-79 (2d Cir. 2017).

As the District Court aptly noted, "the webpage in this case falls somewhere in between those two examples"—though ultimately it is closer to the webpage in the former case than in the latter. *Arnaud*, 2019 WL 4279268 at *6. The District Court found that because the Subway webpage was relatively cluttered, did not use a conspicuous size or font for the terms and conditions link, and did not provide language informing the user that by clicking "I'M IN" the user was agreeing to anything other than the receipt of a coupon, the user would not have been on inquiry notice of the arbitration provision. *Id.*

We agree with the District Court and conclude on our own review of the Subway webpage that it is insufficient to provide inquiry notice. A reasonable user would not find the terms and conditions link contained on the page to be conspicuous, since the link was at the bottom of the page, in relatively small font, and was introduced by no language other than the shorthand

3

"T & Cs." A reasonable user would therefore not recognize that by clicking "I'M IN" he agreed to be bound by those terms and conditions.

Subway argues that Arnaud's failure to submit any evidence, such as a sworn affidavit substantiating his version of the facts, left the District Court without a basis to conclude that he was not, in fact, on actual notice of the terms of the contract. Subway claims that Arnaud's general denials on this point were not enough. But this argument assumes that Subway itself has adduced some evidence that Arnaud was on actual notice. As we have noted it is only when "the party seeking arbitration has *substantiated the entitlement by a showing of evidentiary facts* [that] the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) (emphasis added). Since Subway has not provided facts demonstrating Arnaud's knowledge of the terms and conditions, Arnaud needed to do no more to substantiate his factual allegations at this stage.

## CONCLUSION

We have reviewed all of the arguments raised by Subway on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the September 10, 2019 order.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk