RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0057P (6th Cir.)
File Name: 02a0057p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

VESTAX SECURITIES
CORPORATION,
      *Plaintiff-Appellant,*

    *v.*

ARTHUR B. MCWOOD, et al.,
      *Defendants-Appellees.*

No. 00-1936

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
Nos. 99-60704; 99-60739—George C. Steeh,
District Judge.

Argued and Submitted: November 28, 2001

Decided and Filed: February 14, 2002

Before: JONES, NELSON, and DAUGHTREY, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Marion H. Little, Jr., ZEIGER & CARPENTER,
Columbus, Ohio, for Appellant. **ON BRIEF:** Marion H.
Little, Jr., John W. Zeiger, ZEIGER & CARPENTER,
Columbus, Ohio, for Appellant. Anthony V. Trogan, Jr.,

1

ANTHONY V. TROGAN P.L.L.C., West Bloomfield, Michigan, for Appellees.

JONES, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. NELSON, J. (pp. 10-11), delivered a separate concurring opinion.

————————————

## OPINION

————————————

NATHANIEL R. JONES, Circuit Judge. Vestax Securities Corporation ("Vestax") appeals the district court's order granting a motion to compel the arbitration of its dispute with several investors regarding the purchase and sale of securities. The company also challenges on appeal the order of the district court dismissing the declaratory judgment actions Vestax filed against the investors. The district court held that the investors were "customers" of Vestax within the meaning of National Association of Securities Dealers ("NASD") Rule 10301(a), and were therefore entitled to demand arbitration. For the following reasons, we affirm.

## I. BACKGROUND

Vestax is an Ohio-based securities brokerage firm and a registered member of the NASD. Vestax employs approximately 625 registered agents who offer investments advice and place trades in various ventures on behalf of Vestax customers. The current dispute centers on the allegedly negligent and fraudulent conduct of two Vestax dealers, Jon Davis and Brian Dunn, in certain securities transactions. Davis was a registered representative of Vestax from 1990 to 1998, whereas Dunn was a representative from 1991 to 1999. Over the course of that period, Davis and Dunn recommended securities and made purchases on behalf of Arthur McWood ("McWood"), and a second group of investors including Archibald Montgomery, Barbara Montgomery, the Archibald Montgomery Living Trust, the

*Hancock*) did not arise solely in connection with the activities of the associated persons.

———————————

## CONCURRENCE

———————————

DAVID A. NELSON, Circuit Judge.  I agree that the text of NASD Rule 10301(a) entitles the investors in this case to go to arbitration.  Under the Second Circuit's construction of the rule, at least, arbitration of the dispute can be compelled even if the investors never became Vestax "customers" and even if their claims did not arise in connection with the business of Vestax, as long as the investors were customers of associated persons Davis and Dunn and as long as the claims arose in connection with the activities of Davis and Dunn.  See *John Hancock*, 254 F.3d at 51 ("The Investors are customers of Fucilo.  They are not customers of John Hancock") and 58-59 ("assuming that the Investors' claims do not relate to John Hancock's business . . . the parties do not dispute that the Investors' claims arise out of the activities of Fucilo, an associated person").

Whether a rule this broad makes sense as a matter of policy is not for us to say, in my view.  "We are without authority to venture beyond our province, and must leave the very legitimate policy issues identified by the appellants to those charged with developing and approving NASD policy."  *Id*. at 61(Katzmann, J., concurring).

In any event, the facts of the case at bar present a somewhat less extreme case than that presented by the facts in *John Hancock*.  Here, as in *Oppenheimer*, 56 F.3d at 357, the investors knew that the brokers with whom they dealt were associates of the member company.  The investors contend, indeed, that the brokers – acting as agents of the member company – represented that the member company vouched for the investments that were being recommended .  If these investors are telling the truth, their claims against the member company arose in connection with the business of that company and (contrary to the situation hypothesized in *John*

Barbara Montgomery Living Trust, and Chrom Services, Inc., the Montgomery's personal service corporation.  We will refer to this second group, for convenience, as "the Montgomery defendants."

The investors purchased the following securities on the basis of the advice provided by Davis and Dunn:

| | |
|---|---|
| A. Montgomery Trust | – Capella Computer  $100,000 |
| Chrom Services | – Opus Minerals  $16,954 |
| | – Opus Minerals  $6,303 |
| B. Montgomery | – Opus Minerals  $5,115 |
| B. Montgomery Trust | – Opus Minerals  $142,359 |
| | – Rangestar  $29,284 |
| McWood | – Rangestar  $50,329 |
| | – Castle Capital Corp.  $60,347 |

The securities, however, did not turn out well for the investors.  McWood and the Montgomery defendants claim that they lost all of the money they invested in the securities as a result of the Vestax agents' allegedly poor investments advice.  To recover on the failed investments, the defendants filed an arbitration claim against Vestax with the NASD.  The defendants allege that Davis and Dunn committed a number of unprofessional and fraudulent acts in their capacity as Vestax agents, including:  (i) failing to make suitable investment recommendations, (ii) accepting undisclosed commissions, (iii) issuing press releases prior to selling the securities, (iv) encouraging the purchase of securities based on insider information, (v) engaging in private securities transactions, and (vi) frontrunning trades.

Vestax responded with two declaratory judgment actions, one against McWood, and another against the Montgomery defendants seeking a judicial determination that it was not liable to the investors for the alleged misconduct of its registered agents.  The defendants, in turn, filed a motion to compel the arbitration of their claims and to dismiss Vestax's declaratory judgment actions.  Vestax resisted the effort to submit the dispute to arbitration on the ground that most of the securities transactions in question, although recommended by its agents, were placed through brokerage firms other than Vestax.  The investors do not dispute this, but argue instead that they purchased the securities in this manner because Davis and Dunn advised them to do so to avoid certain costly and inefficient transaction costs.  Nonetheless, Vestax pointed out  that several of the investors at no time ever held an account with the firm and therefore argued that the brokerage firm could not be compelled to arbitrate claims with persons who could not fairly be considered its customers.

After a hearing on July 18, 2000, the district court dismissed Vestax's declaratory judgment actions and granted the motion to compel arbitration on the basis of the definition of "customer" supplied by NASD Rule 10301(a).  The court reasoned that in light of their dealings with Davis and Dunn, the investors were customers of persons associated with Vestax, and as such were entitled to demand arbitration. Vestax now challenges the district court's analysis and conclusions of law on appeal.

## II.  DISCUSSION

The sole issue on appeal is whether the district court properly determined that the claims against Vestax were subject to arbitration.  The district court's determination that the present dispute is arbitrable is reviewable *de novo*.  *See E.E.O.C. v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448, 454 (6th Cir. 1999) ("We review *de novo* a district court's determination that a dispute is arbitrable.").

## III.  CONCLUSION

We affirm the district court's order dismissing Vestax's actions for declaratory judgment and granting the motion to compel arbitration in accordance with NASD procedures.

claim, or controversy between a customer or a non-member and a member . . . arising in connection with the business of such member . . . shall be arbitrated under the Constitution and Rules of the New York Stock Exchange . . . ." In holding that NYSE Rule 600(a) permitted arbitration in circumstances where the investor lacked a direct transactional relationship with the NYSE member, the court observed the important policies which support the rule:

> Defining customers to include not only those who executed purchases with member firms, but also those who maintained a less formal business relationship at the time of the alleged misconduct, furthers NYSE policy and recognizes market reality. . . . [T]he sale of securities is usually a rather complex and convoluted transaction which requires the expertise and involvement of several parties to succeed.

*Lehman Brothers,* 939 F. Supp. at 1340 (internal quotations and citations omitted).

The cases cited by Vestax do not dissuade us from our holding in this case. Vestax relies primarily on the Eleventh Circuit's decision in *Wheat, First Securities, Inc. v. Green,* 993 F.2d 814 (11th Cir. 1993), holding that the investors were not "customers" of the NASD member notwithstanding their relationship with several of the firm's agents. *Wheat, First* is factually distinguishable from the case *sub judice* for the simple reason that the investors in that case were harmed by the conduct of persons who were employed by the brokerage firm's predecessor-in-interest. The investors sought to compel Wheat, First, the successor firm, to arbitrate claims that arose out of misconduct that occurred before Wheat, First assumed the status of successor-in-interest. *Wheat, First* naturally held that the investors had absolutely no relationship with the broker-dealer *or* its registered agents, and therefore could not fairly be considered its customers under NASD Rule 10301. *Id.* at 818.

We begin our analysis with the observation that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415 (1986). Indeed, this basic principle is at the heart of Vestax's argument that the current dispute is not subject to arbitration. Vestax notes that none of the investors had a written contract with Vestax requiring that disputes be arbitrated with the NASD. Vestax further contends that while the investors received advice and recommendations from its registered agents, Vestax received no commissions and was not even aware of the transactions that were ultimately placed through other broker-dealers. On the basis of this reasoning, Vestax argues that the motion to compel arbitration was granted in error as there simply was no agreement to arbitrate disputes with the investors.

The NASD Code of Arbitration Procedure, however, creates the right of parties to compel an NASD-member firm to arbitrate even in the absence of a direct transactional relationship with the firm. NASD Rule 10301(a) directs that a member firm must submit to arbitration "[a]ny dispute, claim, or controversy . . . between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons . . . ." In other words, there are two conditions that must be satisfied to trigger the NASD arbitration requirement. First, the claim must involve a dispute between either an NASD-member and a customer, or an associated person and a customer. Second, the dispute must arise in connection with the activities of the member or in connection with the business activities of the associated person. We believe that both conditions have been satisfied in the case before us.

There is no question that the investors had little in the way of a contractual or transactional relationship with Vestax. Only McWood and the two Montgomery trusts opened

accounts with Vestax during the period in question. Among these three investors, only $20,000 in securities were purchased directly through Vestax. Neither Archibald and Barbara Montgomery nor their personal services corporation, Chrom Services, Inc., ever established an account with Vestax or purchased securities through the brokerage firm. Each one of the investors, however, did establish trading accounts with Davis and Dunn in which the investors purchased the securities the agents recommended to them.

A number of courts have held that an agent or representative of a financial services firm is an "associated person" under NASD Rule 10301(a) such that a relationship with the agent entitles the investor to the arbitration process. The Second Circuit Court of Appeals has twice held that an NASD-member firm must arbitrate disputes with investors on the basis of a relationship between the investor and such a representative. In *John Hancock Life Insurance Co. v. Wilson,* 254 F.3d 48 (2d Cir. 2001), the only connection between the investors and John Hancock was their relationship with Frank P. Fucilo, a John Hancock sales representative. *Id.* at 51. In fact, it was undisputed that the investors were not even aware of the affiliation between Fucilo and the life insurance company. *Id.* In determining that the dispute was subject to arbitration, the Second Circuit "look[ed] no further than the plain language of Rule 10301 " and concluded that "the term 'customer' plainly refers to either the member's or the associated person's customer." *Id.* at 58-59. The Second Circuit similarly held in *Oppenheimer & Co. Inc. v. Neidhardt,* 56 F.3d 352 (2d Cir. 1995), that under the NASD Code, when the investor deals with an agent or representative, the investor deals with the member, and on that basis the investor is entitled to have resolved in arbitration any dispute that arises out of that relationship. *Id.* at 357.

In both cases, the Second Circuit rejected the argument presented here on appeal that Rule 10301 requires that defendant-investors be direct customers of Vestax. Although

this court has, to this date, not addressed the issue, lower federal courts in this circuit have followed the Second Circuit's approach. *See Vestax Securities Corporation v. Skillman*, 117 F. Supp.2d 654, 657 (N.D. Ohio 2000) ("The fact that defendants never opened accounts with plaintiff is irrelevant. By conducting business with plaintiff's registered representative, defendants conducted business with plaintiff and became its customers."); *WMA Securities Inc. v. Ruppert*, 80 F. Supp.2d 786, 789 (S.D. Ohio 1999) (same). In this case, Vestax does not dispute that Dunn and Davis were registered agents of Vestax during the period in question. Consequently, the district court correctly determined that the present dispute is between a customer and an "associated person" within the meaning of NASD Rule 10301.

As noted earlier, however, the claim must also arise in connection with the activities of the NASD member or in connection with the business of the associated person under Rule 10301. The investors intend to prove in arbitration that the failure of Vestax to properly supervise the activities of Davis and Dunn led to the loss in question. "A dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business." *John Hancock,* 254 F.3d at 58-59. Therefore, having determined that the current dispute (i) is between customers and persons associated with Vestax, and (ii) arises in connection with Vestax's alleged negligent supervision of its registered agents, we hold that the district court properly granted the motion to compel the arbitration of the claims against Vestax pursuant to NASD Rule 10301.

We are confident that our analysis of Rule 10301 not only comports with the rule's unambiguous text, it also makes sense as a matter of policy. In *Lehman Brothers Inc. v. Certified Reporting Co.,* 939 F. Supp. 1333 (N.D. Illinois 1996), the court analyzed New York Stock Exchange ("NYSE") Rule 600(a), which provides for the arbitration of disputes "arising in connection with the business" of a member-broker. This rule, which is identical to NASD Rule 10301 in all relevant respects, provides that "[a]ny dispute,