**WMA SECURITIES, INC.,**
**Plaintiff–Appellant,**

v.

**Dean WYNN, Margaret Wynn, and Quentin Fields, Defendants–Appellees.**

No. 00–4232.

United States Court of Appeals, Sixth Circuit.

April 1, 2002.

727

Before JONES * and COLE, Circuit Judges; and GWIN, District Judge:**

JONES, Circuit Judge.

Plaintiff WMA Securities, Inc. ("WMAS") appeals the district court's judgment for defendants Dean Wynn, Margaret Wynn, and Quentin Fields, confirming a 1999 arbitration award. The district court denied WMAS' Motion to Vacate Arbitration Award (regarding award of attorney fees), denied WMAS' Motion to Confirm Award (regarding arbi-

trator's directive that defendant Fields return securities to WMAS), and granted the defendants' Motion to Confirm Award. For the following reasons, we affirm the district court's judgment.

## I. BACKGROUND

WMAS is a Georgia-based securities broker and a member of the National Association of Securities Dealers ("NASD"). WMAS employs registered agents who provide investment advice and brokerage services to WMAS customers. This dispute involves the defendants' investment losses from their professional relationships with former WMAS agent Scott Rothfuss ("Rothfuss").

Rothfuss was a registered representative of WMAS from September 1995 to May 1997. During this period, Rothfuss recommended to the defendants that they purchase First Lenders Indemnity Corporation ("FLIC") securities and the defendants agreed. On April 2, 1996, Rothfuss purchased an FLIC promissory note on Fields' behalf in the amount of $60,000. On April 29, 1996, Rothfuss bought an FLIC promissory note on the Wynns' behalf in the amount of $26,831.75. Finally, on May 2, 1996, Rothfuss purchased another FLIC note on Dean Wynn's behalf in the amount of $141,516.02.

These purchases were not favorable for the Wynns and Fields. In May 1997, FLIC filed for bankruptcy. These proceedings caused the Wynns and Fields to lose 100 percent of their investment. On January 28, 1998, defendants filed an arbitration claim against WMAS with the NASD in an effort to recover their losses. Defendants alleged that: (i) WMAS failed

* This opinion was submitted to the court prior to Judge Nathaniel R. Jones' departure from the court effective April 2, 2002.

** The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

to supervise its registered representative, Rothfuss; and, (ii) through Rothfuss, WMAS sold them fraudulent, unregistered FLIC promissory notes based on misstatements and omissions of material facts. According to defendants, they invested in FLIC on Rothfuss' recommendation, but he never indicated that FLIC was not an approved WMAS product or that WMAS had restricted his license to sell securities in any way.

In a March 1999 arbitration award to defendants, NASD arbitrators denied WMAS' Motion to Dismiss on jurisdictional grounds and required WMAS to pay $199,000 to the Wynns as compensatory damages, $65,000 to Fields as compensatory damages, and $80,000 to the Wynns and Fields as attorneys' fees and costs. On June 8, 1999, the NASD arbitrators wrote a letter ("the June 1999 letter") to WMAS in which the NASD ordered the following change to their award:

> It was the opinion of the arbitration panel that its decision was final. However, this matter is being submitted to the arbitration panel post-hearing for clarification. [I]t is the unanimous decision of the panel that its award be based on the claimants' recission [sic] claim. Regardless of value, the securities shall be returned to [WMAS].

J.A. at 213.

On December 30, 1999, WMAS filed suit in the United States District Court for the Southern District of Ohio, seeking to vacate the NASD arbitration award. After the NASD arbitrators stated in the June 1999 letter that defendants should return the FLIC securities to WMAS, WMAS amended its Complaint to demand that Fields return the promissory notes. Subsequently, WMAS moved to confirm, as a separate award, the arbitrators' June 1999 letter to force the return of the securities, and also to vacate the award of attorneys'

fees. In turn, defendants moved to confirm the arbitration award.

The motions were designated to Magistrate Judge Timothy Hogan. In his February 22, 2000 Report and Recommendation, the Magistrate recommended the denial of both WMAS' Motion to Confirm the arbitrators' June 1999 letter and its Motion to Vacate the award of legal fees. In his February 28, 2000 Report and Recommendation, the Magistrate recommended granting the defendants' Motion to Confirm the Arbitration Award. On June 7, 2000, the district court entered judgment in accordance with the Magistrate's recommendations. WMAS now challenges the NASD's jurisdiction over this dispute, and requests that the arbitration panel's order that the securities be returned be confirmed and that the award of attorney fees be vacated.

## II. ANALYSIS

### A. Standards of Review

The initial issue focuses on whether the district court properly determined that the claims against WMAS were subject to arbitration. We review *de novo* a district court's determination that a dispute is arbitrable. *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 454 (6th Cir. 1999). To the extent to which the remaining issues deal with an arbitration award, we review such awards only for manifest disregard of the law. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995).

### B. Jurisdiction

■ The first issue on appeal concerns whether the current dispute is subject to arbitration, thus granting jurisdiction to the arbitration panel. The district court judge adopted the Magistrate's finding that the dispute was arbitrable because the

Wynns were customers under NASD Rule 10301. WMAS disagrees with the classification of the Wynns as "customers." WMAS asserts that it was not aware of the transactions that were made through other broker-dealers such that a customer relationship with WMAS was ever established. Moreover, it asserts that none of the investors had written contracts with WMAS requiring that disputes be arbitrated with the NASD. Thus, WMAS contends, as the Wynns were not customers of WMAS, the NASD did not have jurisdiction over this dispute.

We agree with the district court's finding that the arbitration panel had jurisdiction. NASD Rule 10301 states in pertinent part:

> Any dispute, claim or controversy ... between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code ... upon the demand of the customer.

NASD Rule 10301(a). Recently, in a case virtually identical to this one, this court specifically held that persons who discuss investment possibilities with a registered representative of a NASD member but do not open accounts with the NASD member are "customers" under NASD Rule 10301(a). *Vestax Securities Corporation v. McWood,* 280 F.3d 1078 (6th Cir.2002). In so holding, we determined that the fact that an investor never established an account with the brokerage firm or purchased securities through the brokerage firm was irrelevant to the issue of whether or not the investors were customers under Rule 10301(a). *Id.* at 1082. We found the investors were indeed customers because they established accounts with the firm's associated persons and the investors purchased securities based upon the agents' recommendations. *Id.* at 1082; *see Op-*

*penheimer v. Neidhardt,* 56 F.3d 352, 357 (2d Cir.1995) (where investors turn over funds to the firm's agent, they have a sufficient customer relationship with the firm).

We believe that the Wynns were indeed "customers" of WMAS under NASD Rule 10301(a). As a registered representative of WMAS, Rothfuss was an "associated person" under the rule. By receiving the advice of Rothfuss and making securities purchases through him, the Wynns conducted business with an associated person of WMAS, and thus became customers of WMAS under the rule. As such, the district court's holding that this dispute was arbitrable was proper and the NASD panel had jurisdiction.

## C. Return of Securities

■ Next, we address WMAS' request for return of the securities. This request requires us to first consider the extent to which an arbitration panel may clarify its final awards. The doctrine of functus officio prevents arbitrators from revisiting a final award after the final award has been issued. *Legion Ins. Co. v. VCW, Inc.,* 198 F.3d 718, 719 (8th Cir.1999) The *functus officio* doctrine is valid in this Circuit. *See Green v. Ameritech Corp.,* 200 F.3d 967, 976 (6th Cir.2000). Under a narrow exception to the *functus officio* doctrine, arbitrators may clarify a seemingly complete award when such an award leaves doubts about whether the submitted issues have been fully executed. *Id.* at 977.

The district court properly rejected the application of this narrow clarification exception. The district court determined that the arbitration panel's award did not leave open a submitted issue for adjudication and did not create an ambiguity. Rather, the district court found that the award expressly stated compensatory damages, fees and costs to which the claimants are entitled and did not provide

for any additional relief. Although the arbitrators characterized WMAS' motion as one of clarification, WMAS' request was actually not a motion to clarify, but instead a motion to amend or correct an error of law. The district court concluded that it was clear from WMAS' motion to amend that WMAS was not seeking clarification of the award but sought relief in addition to that provided in the award. Therefore, the securities should not be returned to WMAS because WMAS had not previously requested their return, nor was the return included in the final award.

## D.  Attorneys' fees

■  Lastly, we address the arbitration panel's authority to grant attorneys' fees. The NASD panel's authority to award attorneys' fees falls within the scope of its broad power to fashion remedies. This Court has found the "American Rule," which generally allows the award of attorneys' fees only when the statute or governing contract permits, inapplicable to arbitration proceedings. *See* Tennessee *Dep't of Human Serv. v. U.S. Dep't of Educ.*, 979 F.2d 1162, 1169 (6th Cir.1992) ("The 'American Rule' applies to the awarding of attorneys' fees to parties that have litigated their cause in the federal courts and, therefore, does not apply to . . . the awarding of attorneys' fees incurred during the arbitration process."). In this arbitration, both parties requested attorneys' fees. Thus, the panel was conferred with the authority to include such fees as part of any award. Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, judicial review of arbitration awards is limited. An arbitration award may only be vacated if it was made in manifest disregard of the law. *Merrill Lynch.* 70 F.3d at 421 (6th Cir.1995). WMAS has produced no evidence that the panel's award of attorneys' fees was made in manifest disregard of the law. Thus, the award should not be vacated.

## III.  CONCLUSION

Therefore, we affirm the district court's decision in all respects.

GWIN, District Judge.

GWIN, District Judge.

I concur with the majority's decision that the district court properly held the dispute arbitrable and that the National Association of Securities Dealers ("NASD") arbitration panel had jurisdiction. However, because the arbitration panel's initial award did not clearly inform the parties of the cause of action on which it was based and because the arbitration panel did not have the authority to award attorney fees, I respectfully dissent from those portions of the majority's decision.

Courts have reached different conclusions on an when individual becomes a customer of a NASD member from whom he did not directly purchase securities. *Compare John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 58–59 (2d Cir.2001) (holding that "customer" should be read broadly under NASD rules), *with Wheat, First Sec., Inc. v. Green,* 993 F.2d 814, 820 (11th Cir.1993) (holding that NASD member need not arbitrate a claim with a current customer because the plaintiff was not a customer at the time of the fraudulent activity). Regardless of the merits of these competing arguments, I agree the Sixth Circuit's recent decision in *Vestax Sec. Corp. v. McWood,* 280 F.3d 1078, 1082 (6th Cir.2002), settles the issue. Because Dean and Margaret Wynn were customers of Scott Rothfuss, an "associated person" of WMA Securities, Inc. ("WMAS"), the Wynns were also customers of WMAS and entitled to arbitrate their dispute.

On the other hand, I believe the district court erred by not recognizing the arbitration panel's June 8, 1999, letter clarifying its earlier arbitration award. The majori-

ty is correct that the *functus officio* doctrine serves to prevent arbitrators from revisiting a final award. Nonetheless, there are exceptions to the doctrine. The NASD panel was entitled to issue its clarification letter when "the award, although seemingly complete, [left] doubt whether the submission has been fully executed." *Green v. Ameritech Corp.,* 200 F.3d 967, 977 (6th Cir.2000) (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 573 (3d Cir.1967)). The June 8, 1999, letter is even more appropriate when it is understood that "exceptions from the *functus officio* doctrine were narrowly drawn to prevent arbitrators from engaging in practices that might encourage them to change their reasoning about a decision, to redirect a distribution of an award, or to change a party's expectations about its rights and liabilities contained in an award." *Teamsters Local 312 v. Matlack, Inc.,* 118 F.3d 985, 992 (3d Cir.1997). The arbitrator's June 8, 1999, letter does not reflect a change in their reasoning, a redistribution of resources, or a change either a party's expectations.

In their amended statement of claim, the appellees specifically request rescission of the contract under Ohio Rev.Code § 1707.43. (J.A. at 570–71). At closing arguments before the arbitration panel, WMAS argued that the appellee's proper claim for relief was rescission. Return of the securities is a required element of relief on a rescission claim. *See* Ohio Rev. Code § 1707.43; *see also Farley v. Henson,* 11 F.3d 827, 837 (8th Cir.1993) (indicating the purpose of the rescissory calculation of § 12 of the 1933 [Securities] Act, 15 U.S.C. § 77l, is to place the plaintiff in the position he held before he entered into the wrongful transaction) (citing *Randall v. Loftsgaarden,* 478 U.S. 647, 655–56, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986)).

In its award, the arbitration panel states the plaintiff sought "actual damages in the amount of $283,485.77, lost opportunity damages and recission interest under the Ohio Securities Act." (J.A. at 589). Nonetheless, in announcing its decision, the arbitration panel merely concluded that WMAS was liable and ordered it to pay compensatory damages. The arbitration panel said nothing about which theory of recovery it based its decision upon.

Furthermore, while the majority describes WMAS's motion as one to amend or correct an error of law, the only action the appellant asked for was that the arbitration panel change its award so the securities be returned upon payment by WMAS. Inherent within WMAS's motion is the assumption that the arbitration panel found for the claimants based on their rescission claim. If the rescission theory was not the basis for the award, there would have been no need for the arbitrators to respond. Instead, the arbitration panel agreed that the appellant's motion sought clarification of the its award. The arbitrator's June 8, 1999, letter stated:

> It was the opinion of the arbitration panel that its decision was final. However, this matter is being submitted to the arbitration panel post hearing for clarification. [I]t is the unanimous decision of the panel that its award be based on the claimants' recission claim. Regardless of value, the security shall be returned to respondents.

The letter does change any aspect of the arbitrator's original award.

This case is similar to the Third Circuit's holding in *La Vale.* In *La Vale,* an arbitrator awarded $31,000 to the defendant. The plaintiff sued to recover $25,000 of a $56,000 deposit it had delivered to the defendant during the pendency of the arbitration proceeding. The defendant argued that the arbitration panel had recognized the $56,000 as a partial payment and that the $31,000 award was supposed to supple-

ment the original payment. The arbitrator's award made no mention of the deposit payment. *La Vale*, 378 F.2d at 570.

The Third Circuit upheld the district court's resubmission of the issue to the arbitration panel for clarification as to whether the sum of $56,000 was a deposit or a payment on account. *Id.* at 573. The *La Vale* court concluded that *functus officio* doctrine would not prevent the resubmission because it would "in no way reopen the merits of the controversy." *Id.*

Similarly, the arbitration panel's June 8, 1999, letter did not reopen the merits of the controversy. The letter does not alter the original award or change either party's expectation. Because the claimants sought rescission of the contract they knew rescission required return of the securities. The arbitration panel's letter only clarifies the basis for its holding. The instruction to return the securities is not a new award. Instead, it just identifies a required consequence of finding for the claimants' on their rescission claim.

At the same time, because the arbitration panel based its decision on the claimants' rescission claim, it improperly awarded attorney fees. The NASD Code of Arbitration Procedure does not explicitly authorize an award of attorney fees. Instead, NASD Rule 10332(c) says:

> [t]he arbitrator(s) may determine in the award the amount of costs incurred ... and, unless applicable law directs otherwise, other costs and expenses of the parties and arbitrator(s) which are within the scope of the agreement of the parties.

(J.A. at 221). WMAS shows that attorney fees are not awarded under the federal

and state statutes upon which the appellees' have based their claims. *See* 15 U.S.C. § 771; Ohio Rev.Code § 1707.43; *see also Straub v. Vaisman & Co.*, 540 F.2d 591, 599 (3d Cir.1976).

Furthermore, contrary to the district court's and majority's assertion, the parties' mutual request for attorney fees does not constitute an agreement.[1] The mere fact both parties asked for attorney fees does not authorize the arbitration panel to award those fees in light of applicable law to the contrary. For this reason, I would vacate the arbitration panel's award of attorney fees.

---

1. In their amended statement of claim, the appellee's asked for "actual damages, together with benefit of the bargain damages, lost opportunity costs, model portfolio damages, prejudgment interest, attorneys' fees, costs, punitive damages, and such other relief as is deemed necessary and proper." (J.A. at 586). In its answer, WMAS asked that "it be dismissed from these proceedings and that it recover its costs and attorney fees incurred herein." (J.A. at 415).