**JEFFERSON PILOT SECURITIES CORPORATION, Plaintiff,**

v.

**Paul G. BLANKENSHIP, Sr., John A. Puskar and Karen A. Puskar, and John C. Watson, Defendants.**

No. 1:02 CV 1678.

United States District Court, N.D. Ohio, Eastern Division.

April 14, 2003.

Jonathan W. Philipp, Esq., Janik & Dorman, L.L.P., Cleveland, OH, for Plaintiff.

Joel A. Goodman, Esq., Stephen Krosschell, Esq., Clearwater, FL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

NUGENT, District Judge.

This matter comes before this Court upon the following motions: (1) Plaintiff's Motion to Stay Arbitration (ECF # 4), filed with the Court on August 26, 2002; and (2) Defendants' Motion to Compel Arbitration (ECF # 13), filed with the Court on October 7, 2002. Both Plaintiff and Defendants have filed their respective replies and supporting memoranda. Following oral argument on the matter on December 13, 2002, Plaintiff filed a Response Supplementing Oral Argument on December 20, 2002, and Defendants filed a Notice of Filing Supplemental Authority in Support of their Motion and in opposition to Plaintiff's Motion on February 19, 2003. For the reasons that follow, the Court hereby GRANTS Defendants' Motion to Compel Arbitration and, accordingly, DENIES Plaintiff's Motion to Stay Arbitration of the within matter.

**Factual and Procedural Background**

In or about December of 2001, Defendants commenced an arbitration proceeding before the National Association of Securities Dealers, Inc. ("NASD") by filing a Statement of Claim. In the Statement of Claim, Defendants allege that Jefferson Pilot, by and through its registered representative, Michael J. Rudolph, sold fraudulent and unregistered investments in ETS Payphones, Inc. ("ETS") and FCMI Web Booth Equipment Lease Program ("FCMI") to Defendants in violation of state and federal law, without adequate supervision of its registered representative and through misstatements and omissions of material facts. Moreover, Defendants allege, by engaging in the above conduct, Plaintiff, directly or indirectly, offered for sale or sold unregistered securities and engaged in a fraud, by making untrue statements of material fact or omitting

material facts or by engaging in courses of business which would operate as a fraud upon other persons. This action, Defendant states, was in violation of federal securities laws. Finally, Defendants allege breach of contract, common law fraud, constructive fraud through breach of fiduciary duty, negligence and gross negligence.

On August 26, 2002, Plaintiff, Jefferson Pilot Securities, filed a Complaint for declaratory judgment and injunctive relief with this Court, along with its Motion to Stay Arbitration. In its Complaint, Plaintiff seeks a declaration that no arbitrable controversy exists between itself and Defendants, namely because, as Plaintiff contends, the Defendants (claimants in the arbitration) were not customers of Jefferson Pilot with respect to the Defendants' purchase of the payphones, and the payphones are not securities. Therefore, according to Plaintiff, Defendants' claims fail as a matter of law. Because the payphones are not securities, Plaintiff contends, Defendants' claims fall outside the scope of the arbitrable controversies encompassed within the rules of the NASD.

In response to Plaintiff's Motion, Defendants filed their Motion seeking to compel Arbitration, on October 7, 2002. The Court heard arguments on the matter on December 13, 2002. Thereafter, both parties filed supplemental briefs in support of their respective motions.

Jefferson Pilot is a securities broker/dealer with the NASD. Michael J. Rudolph was a registered representative of Jefferson Pilot from April 2, 1997 to October 25, 2000.[1] Mr. Rudolph held a Series 6 license issued by the NASD, which permitted Mr. Rudolph to sell variable annuity insurance contracts and certain mutual funds under the supervision of a bro-

ker/dealer. Affidavit of Michael J. Rudolph, ¶ 1. By and through Mr. Rudolph, and upon his alleged recommendation, Defendants each purchased certain coin operated payphones from ETS Payphones, Inc. ("ETS"). Mr. Rudolph also recommended investments with FCMI Web Booth Equipment Lease Program ("FCMI") to Defendant Watson. Defendants allege that Mr. Rudolph identified himself to each Defendant as a licensed representative of Jefferson Pilot, that he gave his Jefferson Pilot business card to Mr. Watson, and that he opened accounts with Jefferson Pilot for Defendants John and Karen Puskar. Plaintiff, on the other hand, claims that Mr. Rudolph, at all times, held himself out as an agent of NCMI and ETS with respect to the relevant investments. Moreover, Plaintiff states that all commissions from such investments were paid directly to Mr. Rudolph from NCMI, and Jefferson Pilot never received any financial benefit from, or incentive for, any of the subject payphone purchases.

According to Plaintiff, NCMI registered its payphone program with the Federal Trade Commission and the Ohio Department of Commerce as a "business opportunity," and NCMI advised its sales force, including Mr. Rudolph, that the payphone program was, indeed, a "business opportunity," rather than a security. Plaintiff also contends that NCMI advised its staff that because the payphones were not securities, the agents were not required to disclose their relationship with NCMI to the brokers/dealers holding their licenses.

Defendants allegedly advised Mr. Rudolph that they were interested in safe and conservative investments. In response, Mr. Rudolph recommended the ETS pay-

---

**1.** Mr. Rudolph originally became a registered representative with Chubb Securities Corporation. Chubb was purchased by Jefferson Pilot in or about 1997 or 1998, and Mr.

Rudolph transferred his association to Jefferson Pilot. Affidavit of Michael J. Rudolph, ¶ 11.

phones, as well as the NCMI investment to Defendant Watson. With respect to the purchase and/or lease of the subject payphones, Mr. Rudolph presented three options to Defendants: (1) Defendants could assume complete control of the payphones; (2) Defendants could contract with ETS for a turn key operation whereby ETS would perform certain service and maintenance for a fee and the profits on each payphone would be distributed to the purchasers; or (3) Defendants could purchase and lease the payphones to ETS for sixty (60) months, whereby at the end of the term of sixty (60) months and at the purchaser's request, ETS agreed to purchase the payphones from the Defendants/purchasers at the original purchase price. Rudolph Aff., ¶ 7. In this case, each Defendant selected the third option: purchase and lease the payphones to ETS. On September 11, 2000, ETS filed for Chapter 11 Bankruptcy protection. ETS failed to honor its payment obligations pursuant to the lease agreements entered into with Defendants.

## Discussion

Defendants claim that this matter is arbitrable pursuant to the Federal Arbitration Act, the NASD's Code of Arbitration Procedure, and the Licensing Agreement between Jefferson Pilot and NASD. Defendant contends that their disputes are arbitrable because: their disputes arise in connection with Jefferson Pilot's employee's activities and with his employment with Jefferson Pilot; they conducted business with Jefferson Pilot's registered representative and, therefore, conducted business with Jefferson Pilot; the NASD's arbitration jurisdiction is not limited to purchases and sales of securities; and Jefferson Pilot's duty to supervise its brokers' compliance with NASD rules and its common law duty to supervise are a part of Jefferson Pilot's business. Moreover, assuming *arguendo*, that NASD's jurisdiction is limited to securities-related disputes, Defendants'

allegations are sufficient to entitle them to arbitration, and the arbitrators can properly conclude that the above purchase and sale of payphones are, indeed, securities.

The Federal Arbitration Act ("FAA") provides, in pertinent part, as follows:

> A written provision in any...contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Once a court determines that issues in litigation are subject to arbitration, the court proceedings must be stayed until the arbitration process is complete. 9 U.S.C. § 3.

It is well-established that federal policy favors the enforcement of valid agreements to arbitrate. "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary...." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Any doubts regarding such agreements should be resolved in favor of arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10–13, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital*, 460 U.S. at 24–25, 103 S.Ct. 927. Moreover, where the contract at issue contains an arbitration clause, "there is a presumption of arbitrability in the sense that an order to arbitrate the grievance should not be denied unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Once a court determines that a valid agreement to arbitrate exists, all other issues concerning the dispute must be reserved for the arbitration forum. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also Ferro Corp. v. Garrison Industries*, 142 F.3d 926, 933 (6th Cir.1998)(*citing Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). Therefore, the dispute at issue must be within the scope of the arbitration provision. *Stout*, 228 F.3d at 714. A party cannot be forced to arbitrate issues for which there was no agreement to do so. *Roney & Co. v. Kassab*, 981 F.2d 894, 897 (6th Cir.1992).

In its section entitled "Matters Eligible for Submission," The NASD Code of Arbitration Procedure provides for the arbitration of certain disputes. It states as follows:

> This Code...is prescribed and adopted...for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company: (a) between or among members; (b) between or among members and associated persons; (c) between or among members or associated persons and public customers, or others....

NASD Code of Arbitration Procedure, Rule 10101. Moreover, the NASD's Uniform Code of Arbitration, under "Required Submissions," provides the following:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series [above] between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer....

NASD Uniform Code of Arbitration, Rule 10301.

The Sixth Circuit has held that even in the absence of a "direct transactional relationship" with an NASD-member firm, the NASD Code of Arbitration Procedure "creates the right of parties to compel" such firm to arbitrate, in accordance with Rule 10301, as recited above. *Vestax Sec. Corp. v. McWood*, 280 F.3d 1078, 1081 (6th Cir.2002). The *Vestax* Court determined that there are two conditions that must be satisfied in order to trigger the NASD arbitration requirement: (1) the claim must involve a dispute between either an NASD-member and a customer, or an associated person and a customer; and (2) the dispute must arise in connection with the activities of the member or in connection with the business activities of the associated person. *Vestax*, 280 F.3d at 1081.

In the instant case, there is no dispute that Plaintiff Jefferson Pilot is, in fact, an NASD-member firm. The dispute, however, lies with the activities of the "associated person," Michael Rudolph, and his customers, the Defendants. Plaintiff contends that in order for the matter to be eligible for arbitration, the dispute between the associated person, Michael Rudolph, and his customers must arise out of or in connection with the "business of a member." If the dispute does not include the sale of a security, as Plaintiff contends, then the dispute, by definition, does

not "arise out of," nor is it "in connection with," the business of a securities broker/dealer, Jefferson Pilot. See Plaintiff's Motion to Stay Arbitration, p. 9. Plaintiff contends that the ETS investment at issue in this case does not involve the sale of a security, and therefore, it does not involve the "business of any member." As such, Plaintiff concludes that Defendants have no legal or contractual basis upon which to proceed with Arbitration, pursuant to NASD Rule 10101.

In *Vestax, supra,* the dispute centered on the alleged negligent and fraudulent conduct of two of the brokerage firm's dealers' conduct in certain securities investments. Over a period of time, the two registered representatives of Vestax, John Davis and Brian Dunn, recommended securities and made purchases on behalf of the Defendants. The Vestax Defendants lost all of their money in such investments and claimed that the loss was due to the agents' poor investment advice. *Vestax,* 280 F.3d at 1080. The Vestax Defendants also alleged that the failure of Vestax to properly supervise the activities of its agents, Davis and Dunn, led to the loss at issue. *Id.* at 1082. Defendants in the within matter make the same claim against Mr. Rudolph's brokerage firm, Jefferson Pilot.

Cognizant of the requirement that the dispute at issue must arise out of, or be in connection with, the activities of the NASD member or in connection with the business of the associated person, in accordance with Rule 10301, the Sixth Circuit concluded that " '[a] dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business." ' *Vestax,* 280 F.3d at 1082 (*quoting John Hancock Life Insurance Co. v. Wilson,* 254 F.3d 48, 58–59 (2d Cir.2001)). Additionally, citing *Oppenheimer & Co. v. Neidhardt,* 56 F.3d 352, 357 (2d Cir.1995), the Sixth Circuit accepted the proposition that when an investor deals with an agent or representative, the investor deals with the member, and on that basis the investor is entitled to arbitration of any dispute that arises out of that relationship. *Vestax,* 280 F.3d at 1082 (*citing Oppenheimer,* 56 F.3d at 357). Therefore, having determined that the relevant dispute was (1) between customers and persons associated with Vestax, and (2) arises in connection with Vestax's alleged negligent supervision of its registered agents or representatives, the Sixth Circuit held, in *Vestax,* that, pursuant to Rule 10301, arbitration was the proper forum of the parties' dispute. *Id.*

In this case, Defendants allege, among other things, that Jefferson Pilot negligently supervised its representative, Mr. Rudolph. The Sixth Circuit has held that a brokerage firm's business includes the supervision of its registered representatives. *Vestax,* 280 F.3d 1078, 1082. Because Defendants' claims arise in connection with one of Jefferson Pilot's representatives, the claims arise in connection with Jefferson Pilot's business. While Plaintiff argues that Vestax does not apply to the instant matter because the dispute in Vestax concerned securities, and Plaintiff contends that the ETS investment at issue herein is not securities related, this Court finds that such argument is not dispositive of the issue. In liberally construing the matter in favor of arbitration, this Court cannot say with positive assurance that the arbitration provision at issue "is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech., Inc.,* 475 U.S. at 650, 106 S.Ct. 1415.

In further support of this Court's determination above, the Court recognizes the NASD's proposed rule change "to delete the requirement that disputes be 'securities-related' so that any dispute, claim, or

controversy arising out of or in connection with the business of an NASD member is arbitrable." *In the Matter of NASD, Inc.,* 20 S.E.C. Docket 233, 1980 WL 27003 at *1 (May 30, 1980). In finding that the proposed change "is consistent with the [Securities Exchange Act of 1934, 15 U.S.C. 78(s)(b)(1) ] and the rules and regulations thereunder...", and it promotes "just and equitable principles of trade," the Commission approved the proposed rule change. *Id.*

This amended rule arguably extends the NASD's arbitral authority over non-securities-related disputes, as the NASD's disciplinary authority is not restricted to securities. In *Vail v. Securities and Exchange Commiss'n,* 101 F.3d 37, 39 (5th Cir.1996), a case wherein a broker misappropriated funds from a club for which he was the treasurer, the Fifth Circuit determined that the broker's position as a fiduciary of the club, managing the club's funds, constituted "business related conduct" and, as such, his conduct fell within the prohibition of the NASD rules. *Id.* The *Vail* Court stated, "the [Securities and Exchange Commission ("SEC") ] has consistently held that the NASD's 'disciplinary authority is broad enough to encompass business-related conduct that is inconsistent with just and equitable principles of trade, even if that activity does not involve a security.'" *Id.* (citation omitted.)

In another matter, the SEC affirmed the NASD's sanctions against a broker who engaged in certain non-securities-related misconduct, stating, "We consistently have held that misconduct not related to the securities industry nonetheless may violate [NASD rules]...." *Leonard John Ialeggio,* 63 S.E.C. Docket 295, 1996 WL 632974 (Oct. 31, 1996). The SEC reasoned, "[the broker's] actions cast doubt on his commitment to the fiduciary standards demanded of registered persons in the securities industry and thus properly are the subject of NASD disciplinary action." *Id.*

Moreover, in *Order Granting Approval to Proposed Rule Change Relating to Mandatory Arbitration of Claims Involving Exempted Securities,* 67 S.E.C. Docket 816, 1998 WL 324589 at *2 (June 19, 1998), the NASD and the SEC said that the subject matter jurisdiction of the arbitration forum "should not be significantly different from the NASD's regulatory jurisdiction over its members and associated persons." Applying these same principles to the instant case, the NASD's arbitral authority could extend to Mr. Rudolph's non-securities-related activities because the subject matter of the NASD's arbitration and regulatory jurisdictions "should not be significantly different." *Id.* at *2.

There is also a strong policy argument favoring arbitration of non-securities-related disputes, particularly with respect to the duty to supervise. NASD Rule 2110 provides that "a member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade." NASD Rule 2110; *Vail v. SEC,* 101 F.3d 37, 39 (5th Cir.1996)(finding the NASD's disciplinary authority encompasses business-related, non-securities-related, conduct that is inconsistent with just and equitable principles of trade). Furthermore, Rule 3010(a) requires a broker/dealer such as Jefferson Pilot to "establish and maintain a system to supervise the activities of" its representatives or agents, such as Mr. Rudolph. Therefore, regardless of whether the disputed activities of Mr. Rudolph are securities-related, the NASD rules and underlying policies, arguably, impose upon Jefferson Pilot a duty to ensure that its associated person, Mr. Rudolph, complied with the NASD's standards of "just and equitable principles of trade." NASD Rule 2110; *Vail,* 101 F.3d at 39.

### Conclusion

In light of the foregoing, and given the broad presumption of arbitrability, this Court finds the allegations contained in the instant matter to be arbitrable. Therefore: (1) Defendants' Motion to Compel Arbitration (ECF # 13) is GRANTED; (2) Plaintiff's Motion to Stay Arbitration (ECF # 4) is DENIED; and (3) Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief is, accordingly, DISMISSED.

IT IS SO ORDERED.