**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0015n.06

**No. 17-3496**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| WILSON-DAVIS & CO., INC., | ) | **FILED**<br>Jan 08, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) |  |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| JAMES MIRGLIOTTA, Individually and as Administrator of the Estate of Bette Mirgliotta, Deceased, | ) | UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BATCHELDER, GRIFFIN, and WHITE, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant James Mirgliotta and his late wife Bette invested several hundred thousand dollars in penny stocks at the advice of financial advisors. Their investments are now worthless, and the advisors were convicted of securities fraud and are defendants in an SEC enforcement action. Plaintiff Wilson-Davis & Co., Inc. is a brokerage firm that housed the Mirgliottas' investments for just over a month. The Mirgliottas seek to hold Wilson-Davis (and others) responsible for their losses, so James, on his own behalf and on behalf of his wife's estate, filed a statement of claim before the arbitration board of the Financial Industry Regulatory Authority (FINRA). Seeking to enjoin the arbitration proceedings, Wilson-Davis, a FINRA member, filed a complaint for declaratory action and injunctive relief, asserting it lacked any obligation to

arbitrate. The district court disagreed, holding the dispute fell within the scope of FINRA's mandatory arbitration provision, FINRA Rule 12200. We affirm.

I.

Larry Werbel was the Mirgliottas' primary financial advisor. James testified the couple essentially "followed" Werbel's advice and instructions, opening accounts and making trades at Werbel's direction. One of the recommendations made by Werbel and followed by the Mirgliottas was to buy and sell penny stocks to be held in their individual retirement accounts.

Werbel had the Mirgliottas open IRAs at Wilson-Davis in July 2013, transferring funds from their accounts at TD Ameritrade. Christopher Cervino, the Mirgliottas' Wilson-Davis account representative, "worked together" with Werbel to facilitate the opening of their accounts and various transactions within the accounts; Cervino and Werbel made several authorized purchases and sales of penny stocks for the Mirgliottas through Wilson-Davis, for which Wilson-Davis collected fees and commissions. A third individual, Edward Durante, also interfaced with Cervino, Werbel, and James. Only Cervino was a Wilson-Davis employee.

The focal point of this appeal is the Mirgliottas' investment in New Market Enterprises. In the same month the Mirgliottas opened IRAs at Wilson-Davis, Wilson-Davis certified representative Cervino helped James wire $75,000 out of James's IRA at Wilson-Davis to James's personal bank account at Liberty Bank for the purpose of then transferring the funds to Bank of America to purchase securities in New Market Enterprises. The same goes for over $490,000 that was wired from a Wilson-Davis IRA in Bette's name. In one notable email to James, Durante summarized the transfers to New Market Enterprises as follows:

> Wilson Davis & Company . . . will be wiring a total of $565,000 to your joint account at Liberty Bank in Twinsburg, Ohio Monday morning.
>
> * * *
>
> More than likely it will be two separate wires (although it could be combined) one for $490,000 from Bette's account and one for $75,000 from James' account.
>
> Upon receipt of funds Monday, please wire those proceeds $565,000 to the following:
>
> Bank of America
> 3rd Avenue New York Branch (optional)
> NY, NY 10174
>
> * * *
>
> f.b.o. New Market Enterprises, Inc.
>
> Once the funds are credited to the account indicated, I will send you an e-mail acknowledgment of same and then we will process the convertible securities for deposit to your account.

Cervino left Wilson-Davis in August 2013 and arranged for the Mirgliottas' investments to follow him to a new investment firm, COR Clearing. The Mirgliottas continued to invest in penny stocks, and more specifically, wired money out of their IRAs to New Market Enterprises via this new firm at the direction of Werbel, Cervino, and others. Unfortunately, the Mirgliottas' investments are now worthless.

The Mirgliottas' experience with these individuals was not unique. Indeed, Cervino, Werbel, and Durante were convicted of various fraud, money laundering, and conspiracy charges for their role in defrauding investors of over $15 million dollars, and the SEC commenced a related civil enforcement action. These proceedings fit within the overall theme of what happened to the Mirgliottas—Cervino, Werbel, and Durante conspired to defraud the Mirgliottas, using Wilson-Davis as a pass-through investment vehicle. In James's words, "[m]oney went

from TD Ameritrade, to Wilson-Davis, to Liberty Bank, to New Market Enterprises, all per the instructions of Mr. Werbel, Mr. Durante, [and] Mr. Cervino."

In August 2016, James commenced FINRA arbitration proceedings against Werbel, Cervino, Wilson-Davis, another individual (but not Durante), and several other financial investment institutions, claiming a loss of over $700,000. He alleged five counts, three of which related to the institutions' alleged lack of oversight over the Mirgliottas' accounts and brokers: (1) negligence in failing to "adhere to the opening, administering and supervising of the Mirgliottas' accounts and other indirect accounts with the promotion of penny stocks to their investors"; (2) respondeat superior liability for the "misconduct of the respective financial advisors' conduct"; and (3) negligently training and supervising the financial advisors.

Wilson-Davis then filed a complaint for declaratory and injunctive relief in the Northern District of Ohio under the Federal Arbitration Act, 9 U.S.C. § 4, contending it is not obligated to arbitrate the Mirgliottas' claims under FINRA Rule 12200(2). It also moved for an injunction on this basis. In pertinent part, the district court declined to enjoin the Mirgliottas' New Market Enterprises claim, and subsequently denied Wilson-Davis's motion to alter or amend judgment under Rule 59(e), or, alternatively, for relief from judgment under Rule 60(b).[1] Wilson-Davis appeals.

II.

When reviewing a district court's grant or denial of a request for a permanent injunction, we review factual findings for clear error, legal conclusions de novo, and the scope of the relief for an abuse of discretion. *Worldwide Basketball & Sport Tours, Inc. v. Nat'l Coll. Athletic*

---

[1]For reasons not important here, the district court enjoined arbitration for a claim involving losses prior to the Mirgliottas having accounts with Wilson-Davis and declined to enjoin arbitration in another claim. (R. 49). The parties did not appeal these holdings.

*Ass'n*, 388 F.3d 955, 958 (6th Cir. 2004). We review the denial of a request for relief under Rule 59(e) and 60(b) for abuse of discretion. *Hansmann v. Fid. Invs. Inst. Servs. Co.*, 326 F.3d 760, 766 (6th Cir. 2003); *Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009).

III.

Arbitration is "simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 77 (2010) (citation omitted). FINRA Rules "create[] the right of parties to compel [a FINRA]-member firm to arbitrate even in the absence of a direct transactional relationship with the firm." *Vestax Sec. Corp. v. McWood*, 280 F.3d 1078, 1081 (6th Cir. 2002).[2] Specifically, "[p]arties must arbitrate a dispute" under FINRA's Code of Arbitration Procedure if: (1) Arbitration is "[r]equested by the customer"; (2) "The dispute is between a customer and a member or associated person of a member"; and (3) "The dispute arises in connection with the business activities of the member or the associated person[.]" FINRA Rule 12200(2).

Wilson-Davis originally presented two claims of error. First, it contended in its brief that the Mirgliottas were not "customers" of Wilson-Davis for their investments in New Market Enterprises because they purchased those shares after they transferred funds out of their Wilson-Davis accounts and used non-Wilson-Davis funds (i.e., money from Bank of America) to purchase the securities. However, at oral argument, Wilson-Davis conceded the Mirgliottas' customer status. (And even if Wilson-Davis did not so concede, we agree with the district court's same conclusion).

---

[2]*Vestax* considered National Association of Securities Dealers Rule 10301, the predecessor to FINRA Rule 12200. Because the rules are "substantively equivalent," so too is our analysis. *See, e.g.*, *Waterford Inv. Servs., Inc. v. Bosco*, 682 F.3d 348, 353 (4th Cir. 2012).

Therefore, we focus only on Wilson-Davis's second claim of error—that the New Market Enterprises purchases did not "arise[] in connection with the business activities of" Wilson-Davis. FINRA Rule 12200(2). In its view, the Mirgliottas' dispute with Wilson-Davis falls outside this prong because Wilson-Davis "had no involvement with the trades," "did not even know the trades took place," and their losses occurred after they transferred funds out of their Wilson-Davis accounts. Our case law rejects such a narrow interpretation of "business activities."

We previously considered the extent to which alleged negligent and fraudulent conduct by employees of a securities brokerage firm arises in connection with a firm's business activities in *Vestax Securities Corporation v. McWood*, 280 F.3d at 1081–83. There, we broadly held investors may establish such a link by connecting their losses to the firm's alleged failure to supervise its brokers, even though the firm neither received commissions for the transactions nor was "*even aware of the transactions that were ultimately placed through other broker-dealers.*" *Id.* at 1081–82 (citation omitted and emphasis added). This is so, we held, because "[a] *dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business.*" *Id.* at 1082 (citation omitted and emphasis added).

The Mirgliottas' contentions here are straightforward: Crooked financial advisors conspired to direct the Mirgliottas' nest egg into unsuitable investments, using Wilson-Davis—Cervino's employer—as a conduit through which the Mirgliottas' savings passed. As the district court recognized, the record evidence suggests Werbel, Cervino, and Durante participated in a scheme to convince the Mirgliottas to move money to Wilson-Davis and then to New Market Enterprises. Under *Vestax*, a dispute arising "from a firm's lack of supervision over its brokers" constitutes a dispute that "arises in connection with the business activities" of the FINRA

member, even when the FINRA member is not aware of the transactions facilitated by the broker. *Id.* at 1081–82. The Mirgliottas' dispute with Wilson-Davis is that it negligently supervised Cervino (including when he played a role in directing the Mirgliottas' money from Wilson-Davis to New Market Enterprises), which falls comfortably within *Vestax*'s broad holding.

Wilson-Davis seeks to distinguish *Vestax* on the facts.[3] It contends that, unlike in *Vestax*, the Mirgliottas did not advance "competent evidence" that they invested in New Market Enterprises on the advice of Wilson-Davis or Cervino because James gave less-than-definitive deposition testimony about Cervino's exact role regarding the New Market Enterprises investment. To be sure, the deposition testimony regarding who specifically advised the Mirgliottas to invest in New Market Enterprises is not unequivocal. But this does not mean the district court erred in determining Cervino played a direct role in facilitating the transfer of the Mirgliottas' investments to New Market Enterprises and a more general role—for which he was indicted and convicted—of conspiring with Werbel and others to defraud investors.[4]

IV.

For these reasons, we affirm the judgment of the district court.

---

[3]Wilson-Davis also advances facts and an argument not presented to the district court: "Wilson-Davis and Wilson-Davis personnel are not investment 'advisors,' . . . Wilson-Davis does not make investment recommendations, has no trading authority over customer accounts, and transacts *only* unsolicited trade orders on behalf of its clients." Having failed to do so below, we pass on them here. *See, e.g.*, *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 499–501 (6th Cir. 2017) (en banc).

[4]To the extent Wilson-Davis contends it had no duty to supervise the New Market Enterprises trades because those specific purchases were not "executed on Wilson-Davis' trading platform," such an argument lies (as the district court recognized) with the FINRA arbitration panel. It is an argument about liability, not arbitrability.